UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RANDY THOMAS STRADLEY,

        Plaintiff,                      Case No. 1:15-cv-896

v.                                          Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because Defendants are immune or Plaintiff fails to state a claim against them.

**Factual Allegations**

Plaintiff currently is incarcerated in the Kinross Correctional Facility, but the events giving rise to his complaint occurred at the Muskegon Correctional Facility (MCF). In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC), MCF, and the following MCF employees: Warden S.L. Burt; Deputy Warden (Unknown) Jackson; Counselor (Unknown) Brown; Nurses Tia Blake, (Unknown) Eastwold and (Unknown) Dove; Mental Health Worker (Unknown) Stevenson; and Unit Officers (Unknown) Postivich, (Unknown) Wilhelm and (Unknown) Waird.

Plaintiff alleges that Defendant Blake submitted a request to crush Plaintiff's medication. On at least two occasions, Plaintiff attempted to ask Blake why she submitted such a request. Plaintiff asserts that he was required by policy to attempt to resolve the issue with Blake before he filed a grievance concerning the matter.[1] After the second inquiry on February 15, 2013, Defendant Blake allegedly started yelling, "[A]re you going to harass me every day about the incident." (Compl., ECF No. 1, PageID.5, ¶ 29.) Plaintiff then advised Blake, "If you think this is harassment wait until I put this paper on you." (*Id.* at ¶ 30.) Defendant Blake wrote a major misconduct against Plaintiff for threatening behavior claiming that Plaintiff stated, "'I will show you harassment.'" (*Id.* at ¶ 33.) Defendant Blake further stated, "'I feel this is becoming an issue of

---

[1]The MDOC policy directive governing prisoner grievances provides:

Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

MDOC Policy Directive 03.02.130(P).

stalking as inmate consistently seeks me (RN Blake) out in regard to the medication cheeking incident.'" (*Id*.)  As a result of the misconduct charge, Plaintiff was escorted to segregation.

Upon his arrival in segregation, Plaintiff was strip searched and issued a jumpsuit, which he wore with an undershirt and undershorts.  His cell was furnished with a steel bed attached to the floor, a sink, a toilet, two sheets, a blanket, two towels, a face cloth and soap.  Plaintiff alleges that the heat register in his cell was not functioning properly and his bed was positioned in such a way that his head was next to a large, single-pane window.  Plaintiff claims that he asked Defendants Brown, Waird and Wilhelm to move him to a different segregation cell due to the lack of heat.  Brown allegedly ignored his request and the other officers told Plaintiff that they could not move him without approval.  Plaintiff alleges that the heat register occasionally generated a small amount of heat, but it was always "freezing" in his cell. (Compl., PageID.8-9, ¶ 50-57.)  While Defendant Burt was making rounds on February 21, Plaintiff complained to her about the misconduct charge and the lack of heat.  Burt responded that Plaintiff would have to stay in segregation until his hearing on the misconduct charge and failed to respond to his complaint about the lack of heat.  Plaintiff also complained to Defendant Jackson about the lack of heat on or about February 21.  Plaintiff further alleges that on February 23, while Defendant Waird was on lunch break, Defendant Postivich opened a window near Plaintiff's cell.  Plaintiff asked him to close the window, but Postivich refused because none of the other inmates were cold.  When Waird returned from break, he closed the window upon Plaintiff's request.

Following a misconduct hearing on February 26, 2013, the hearing officer dismissed the charge for threatening behavior, but found Plaintiff guilty of insolence.  Plaintiff was released from segregation on February 26 and returned to the general population.

On March 4, Plaintiff filed a Step I grievance against Defendant Blake claiming that she retaliated against him for asking about the order to have his pills crushed. The Step I grievance was rejected by the grievance coordinator as containing vague, extraneous information. Defendant Burt upheld the rejection at Step II. The Step III grievance appeal also was denied. Plaintiff also wrote grievances against Defendant Wilhelm for locking him in a segregation cell without any heat. The grievance was denied at Steps I and II. Plaintiff claims that the Step III grievance appeal, was denied based upon the following representations by MCF staff:

> MCF staff were contacted at Step III and indicated that there is no documentation currently available to indicate the temperature in your cell during the time frame in question. Staff indicate that upon receipt of a cold cell complaint, staff immediately determined whether the temperature in that cell was low and, if so, action was taken to rectify the issue. As there is no additional information or basis found for any relief at Step III, your grievance is denied.

(Compl., PageID.10, ¶ 66.) Plaintiff wrote a third grievance against Defendant Postivich for opening the window and allowing the cold winter air to enter his cell. The grievance was rejected at Step I as duplicative. The rejection was upheld at Steps II and III.

On June 26, 2014, nearly a year after the resolution of the grievances that he initiated on March 4, 2013, Plaintiff filed a grievance based upon "newly discovered evidence" that Defendants provided false information during the Step III investigation(s). The newly discovered evidence included affidavits from other inmates who had been incarcerated in the same segregation cell and confirmed that the heat register did not work and that their complaints about the cold were ignored by prison staff. Plaintiff alleges that in addition to Defendants Waird, Wilhelm and Postivich, Defendants Dove, Eastwold and Stevenson personally witnessed the cold air coming out of Plaintiff's segregation cell. Plaintiff also reported that, according to wundergound.com, the

outdoor low temperatures during his period of incarceration in segregation ranged from zero to 28 degrees. (*See* Compl., PageID.11, ¶ 70.) The Step I grievance was rejected as untimely. The rejection was upheld at Steps II and III.

Plaintiff claims that Defendant Blake retaliated against him for questioning her actions with regard to the pill crushing by bringing a misconduct charge against him for threatening behavior. He further claims that the remaining Defendants "'continued' Nurse Blake's retaliation" by placing him in a segregation cell with no heat from February 15 through 26, 2013. (Compl., Page ID.11, ¶70.) Plaintiff also contends that his placement in a cell with no heat violated his Eighth Amendment right against cruel and unusual punishment.

## Discussion

I. Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-

1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Because MCF is an administrative unit of the MDOC, Plaintiff's claim against MCF also is barred by the Eleventh Amendment.[2] Therefore, the MDOC and MCF must be dismissed.

>  II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

---

[2] An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Neither a prison nor a state corrections department is a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Plaintiff, therefore, also fails to state a claim against the MDOC and MCF.

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim against Defendant Blake fails at the first step as Plaintiff has failed to allege or show that he was engaging in protected conduct. Plaintiff contends that he was required by policy to attempt to resolve the issue with Blake before he filed a grievance against her. However, Plaintiff admits that he tried to discuss the issue with Blake on at least one previous occasion. At that point, Plaintiff satisfied his responsibility for purposes of filing a grievance. The policy does not give prisoners license to repeatedly pursue or harass an officer with whom the prisoner is having a dispute. While Plaintiff was not found guilty of threatening behavior, the hearing officer found him guilty of insolence. Plaintiff's insolence toward's Blake was not protected conduct. *See See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected conduct because such behavior fell within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct).

Moreover, a prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *See Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). *See also Annabel v. Frost*, No. 14–10244, 2015 WL 1322306, at *5 (E.D. Mich. Feb.17, 2015) adopted by 2015 WL 1510680 (E.D. Mich. Mar. 30, 2015) (noting that the checkmate doctrine has been involved in sixteen unpublished Sixth Circuit opinions). Because Plaintiff was found guilty of misconduct, he is barred from claiming that the charge was retaliatory. Plaintiff, therefore, fails to state a retaliation claim against Defendant Blake.

Plaintiff further claims that the remaining Defendants "continued" Blake's retaliation by keeping him in a segregation cell with no heat. Because Plaintiff fails to state a retaliation claim against Blake, he necessarily fails to state a claim based upon the alleged continuation of Blake's retaliation. Moreover, Plaintiff's claim against the remaining Defendants is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts whatsoever to support his conclusion that Defendants intended to retaliate against him by keeping him in a cell with no heat. Accordingly, Plaintiff fails to state a retaliation claim against the remaining Defendants. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Consequently, Plaintiff's retaliation claim against the remaining Defendants must be dismissed for failure to state a claim.

B. **Eighth Amendment**

Plaintiff also brings an Eighth Amendment claim with regard to lack of heat in his segregation cell. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

In assessing whether an alleged Eighth Amendment violation on the basis of exposure to cold temperatures satisfies the objective component, courts look to the duration of exposure and

the totality of conditions contributing to the alleged deprivation. *See Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir.2006) (abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)). For example, in *Spencer*, the plaintiff alleged that he was kept in a cold cell block without appropriate clothing for more than ninety days, and he presented evidence that the corrections officers wore winter coats in this cell block, that rain and snow leaked into his cell, and that officers deliberately removed self help measures that inmates had constructed in an attempt to remedy the cold. *Id*. at 728. The court found that these facts, collectively, showed sufficient deliberate indifference to survive summary judgment. *Id.* at 729.

However, federal courts repeatedly have held that short-term exposure to the cold generally does not rise to the level of an Eighth Amendment violation. *See e.g. Dean v. Campbell*, No. 97-5955, 1998 WL 466137, at *2 (6th Cir. 1998) (confinement in a cold cell for more than twenty days not sufficient to show the type of extreme deprivations necessary for an Eighth Amendment conditions of confinement claim"); *Palmer v. Abdalla*, No. 2:11-cv-503, 2012 WL 4473206, at *5 (S.D. Ohio Sept. 4, 2012), adopted by 2012 WL 4473203 (S.D. Ohio Sept. 26, 2012) (plaintiff's exposure to cold temperatures for approximately three-and-a-half days, resulting in claimed temporary numbness in his hands and feet and a subsequent cold, did not support a finding that plaintiff's conditions of confinement were unconstitutional); *Washington v. Burks*, No. 04-cv-10352, 2008 WL 8694601, at *10 (E.D. Mich. Dec. 17, 2008) (plaintiff's allegations that her cell was cold, she was deprived of a blanket and on another occasion was forced to sleep on the floor do not rise to the level of an Eighth Amendment violation), adopted by 2011 WL 5375189 (E.D. Mich. Nov. 4, 2011); *Harris v. Hulkoff*, No. 2:05-cv-198, 2007 WL 2479467, at *4 (W.D. Mich. Aug. 28, 2007) (plaintiff failed to demonstrate a violation of his Eighth Amendment rights when, although he alleged that he subjectively felt cold, he was at most deprived of warmth for fifty-two hours).

In this case, Plaintiff was held in the segregation cell for only ten days. During that time, he wore a jumpsuit and underclothing. He was provided with a bed, two sheets and a blanket. Plaintiff claims that his cell was "freezing," but does not allege adverse physical affects from the cold. While the conditions in Plaintiff's cell may have been uncomfortable, his temporary exposure to cold temperatures, standing alone, does not satisfy the objective component for an Eighth Amendment claim. Furthermore, absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury resulting from his confinement in the unheated segregation cell. As a consequence, any claim for emotional damages is barred.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Defendants are immune or Plaintiff fails to state a claim against them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 5, 2015          /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 UNITED STATES DISTRICT JUDGE